JOHN MANNERS & Co., INC., Appellant, *v.* S. HIRSHENHORN & SONS, a Copartnership, Respondent.

First Department, November 12, 1952.

*Seymour Stone* of counsel (*Philip Novick* with him on the brief; *Seymour Stone,* attorney), for appellant.

*William E. Friedman* of counsel (*George H. Klein* with him on the brief; *Baer, Marks, Friedman, Berliner & Klein,* attorneys), for respondent.

VAN VOORHIS, J. This action has been brought to recover damages for breach of contract by defendant in failing to deliver a quantity of Chinese hog bristles which defendant had contracted to sell to plaintiff at $4.80 a pound. By the time for delivery the market had appreciated to $7.45 per pound, according to plaintiff's bill of particulars, resulting in a profit which plaintiff claims that it would have made if the contract had been performed of $35,332.45. The amount of the purchase price was $64,000. Plaintiff encountered difficulty in compelling the attendance at the trial of other dealers as witnesses to the market value. It was conceded that the market was higher than the contract price. Plaintiff was permitted to rest, reserving the right later to call its witnesses on market value who had failed to appear in response to subpœna.

The complaint was dismissed upon the law, without the introduction of any evidence for defendant, upon the ground that, regardless of market value, plaintiff had itself broken the contract and therefore was not in position to recover. The breach charged to plaintiff is that it refused to pay for these goods upon a demand made by defendant within the time limited by the contract.

The memorandum of sale, dated December 12, 1950, directed delivery and payment to be made as follows:

" Delivery: These goods are afloat on the SS BROOKLYN HEIGHTS due to arrive in New York December 23rd. Goods are sold subject to safe arrival.

" Payment: Within ten (10) days upon our presentation of two (2) copies Bills of Lading, weight specification and our commercial invoice."

At 3:30 P.M. on December 22d defendant seller sent a messenger to plaintiff's office with a sealed envelope, supposed to have contained the shipping documents, who told plaintiff's vice-president that he " would like a check to cover this envelope." Plaintiff's vice-president testified further: " He did not give me the envelope nor did he open the envelope. And I said, ' It is now after banking hours. I cannot give you a check, but I will give Mr. Hirshenhorn a check on the next banking day,' which was the 26th." Upon the next business day, following

the Christmas weekend, the witness telephoned to Hirshenhorn stating that he was prepared to take up the documents, but Hirshenhorn replied that they were tendered on December 22d and that it was now too late.

Defendant's construction of the contract of sale, adopted by the trial court in dismissing the complaint, is that payment was required to be made upon presentation of documents within ten days from December 12th, which was the date of the memorandum of sale. Plaintiff contends that the ten-day period for payment commenced to run upon arrival of the ship at New York City. Which construction is correct is not entirely clear, but the condition that " Goods are sold subject to safe arrival " lends some color to plaintiff's view that they were not to be paid for until after arrival at destination. The SS *Brooklyn Heights* arrived in New York according to schedule on December 23d. A question of fact was presented whether, by the language used, the parties intended that plaintiff could acquire the goods only by paying for them before the ship reached port. If, for any cause beyond defendant's control, this shipment failed to reach New York, defendant was expressly relieved of any obligation under the contract to deliver the goods to plaintiff. It was not so clear that the trial court could have decided, as matter of law, that these goods had to be paid for before defendant was obligated unconditionally to deliver them. The written contract relied on, prepared by defendant on defendant's stationery, begins with a statement that it was made " Pursuant to the conversation of today between your Mr. Adler and the writer ", defendant's representative.

Moreover, if it were to be assumed that the intention of the sales memorandum was to require payment on presentation of documents within ten days from December 12, 1950, irrespective of the date of arrival of the ship, the duty rested upon defendant to present the documents to plaintiff against payment within the time so limited. Under that construction of the agreement, defendant had to make tender and demand at a reasonable hour on a day not later than December 22d. Defendant waited until after the close of banking hours, upon that day, apparently in the hope and expectation that plaintiff would not have $64,000 then on hand. It was apparently a maneuver to escape from a disadvantageous contract in a rising market by catching plaintiff off guard.

Subdivision 4 of section 124 of the Personal Property Law states: " Demand or tender of delivery may be treated as inef-

fectual unless made at a reasonable hour. What is a reasonable hour is a question of fact.'' In discussing this section, Williston says that the old rules have been modified that bilateral performance, such as this, could be demanded at any time before midnight or before sunset upon the last day named in the contract for performance, and the learned author of the Uniform Sales Act adds that, in the case of some transactions, even before the close of business hours would be too late. He states that what is a reasonable hour of the day is a question of fact largely dependent upon business custom, and that '' Where the question is not merely one of tender but also of demand, reasonableness will depend on the justifiable expectation that the hour is reasonable for giving as well as receiving '' (2 Williston on Sales, [Rev. ed.], § 455, p. 712).

In dismissing the complaint, the trial court, instead of submitting to the jury what was a reasonable hour as a question of fact, made a ruling of law that any time before the close of business hours, although after banking hours, was timely. If the facts of the case were so clear that reasonable men could not reasonably differ, presumably it would have been correct to decide the point on the law, notwithstanding the statutory direction that it shall be decided as a question of fact. Here, however, it is not clear that plaintiff was obligated by business custom to have $64,000 on hand after the close of banking hours upon December 22d. What was done resembles, rather, '' an unreasonable tender and demand by defendant, not made in good faith for the purpose of carrying out the contract, but in an artificial attempt to put plaintiffs in default '' (*Miller* v. *Ungerer & Co.*, 188 App. Div. 655, 658–659). If defendant had seriously expected to close the transaction at that particular moment, it would hardly have sent an ordinary messenger to carry $64,000 in cash through the streets. If payment were to have been made by certified check, that would not have been feasible after the banks had closed.

Plaintiff's vice-president testified, it is true, that the messenger asked for '' a check ''. Plaintiff's counsel stated at the trial that he had defendant's deposition stating that a certified check was demanded, and counsel requested the recall of plaintiff's vice-president to enable him to correct his testimony by stating that the messenger had asked for a certified check. This request was refused, but should have been granted. It is not likely that defendant would have delivered the bills of lading against an uncertified check for $64,000, particularly in view of

defendant's present contention that plaintiff was unable to meet the payment. Plaintiff concedes that it did not have the full purchase price in the bank upon that afternoon, but asserts, and produced testimony tending to establish, that it could have obtained the funds if the banks had not already been closed.

Defendant did not notify plaintiff that these documents were to be presented and payment demanded before its messenger arrived at 3:30 P.M. on December 22d, nor, in the absence of such notice, was plaintiff obligated to have this money instantly available, even assuming that December 22d was the last of the ten-day period on which defendant could present the documents and demand payment. Respondent's brief concedes that " Had defendant presented the documents on any day during the ten-day period other than the last day, the plaintiff might have justifiably required a reasonable time to collect the $64,000. However, by the terms of the contract, the plaintiff was fully informed that the presentation had to be made by December 22 and it should have been prepared to pay in full when the documents were presented that day." This reasoning suggests the query, how long during the last day on which a seller may make tender and demand does the purchaser have to keep himself in immediate readiness to perform? Would plaintiff, if an individual instead of a corporation, have had to carry $64,000 in cash on his person until midnight against the contingency that defendant might elect, without notice to pursue him and to close at the eleventh hour? Laying aside anything resembling courtesy as legally necessary to business relations, the question remains whether the contract required plaintiff to keep $64,000 in cash in its office after banking hours, and until the close of business hours (for even a certified check would not be legal tender if the seller were disposed to be technical — cf. 6 Williston on Contracts [Rev. ed.], § 1810, n. 7, also 23 A. L. R. 1286). If not, then it made no difference whether plaintiff had the necessary funds in its bank account if it could have raised them upon short notice in order to meet the purchase price. An affirmative answer to this question is not so clear that it should have been decided as a question of law, instead of being determined as a question of fact as the statute directs.

In *Wilfand* v. *Zwerner* (168 N. Y. S. 564, 566) the Appellate Term in this Department stated, per LEHMAN, J.: " The plaintiff, however, was entitled upon such tender to a reasonable opportunity to make such payment. In view of the fact that no time was set for the delivery of the flour, and that he received

notice of such delivery 20 minutes before the actual delivery, and at a time when the banks were not open, he could not, as a matter of law, be required to have the cash in his drawer, and the defendant should have given him a reasonable opportunity to obtain such cash. *Bass* v. *White*, 65 N. Y. 565.'' It is true that in the *Wilfand* case a designated period was not set by the contract for closing, but in the present case, where a period of as long as ten days was provided, the triers of the fact could find that what was a reasonable hour on the last day was affected by whether defendant had given some previous notice that tender and demand would then be made.

There is, of course, no evidence concerning what was contained in the sealed envelope brought by defendant's messenger to plaintiff's office. Even on defendant's construction of the contract, presentation of the documents specified in the contract, to wit, '' two (2) copies Bills of Lading, weight specification and our commercial invoice '' was a condition precedent to the demand for payment. On the record before us the tender was, therefore, deficient as there is no proof that these documents were presented on December 22d. In fact there is positive testimony that plaintiff asked to see the papers but defendant's representative refused. Whether plaintiff waived this deficiency, is something that need not now be determined.

The judgment appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event.

CALLAHAN and BREITEL, JJ. (dissenting). We dissent on the ground that the contract called for payment of the price within ten days of the date of agreement. That would require payment to be made on or before December 22d. Payment was conditioned upon presentation of seller's documents. The contract was not ambiguous, and its construction was for the court. At 3:30 P.M. on December 22d, the defendant's messenger presented an envelope alleged to contain the documents and asked for a check in payment of the price. While it is true that seller gave no advance notice before the time of presenting the documents, since they were tendered on the last day, the buyer must have known that he could be called upon to make payment on that day. When the documents were tendered the buyer made no objection as to (1) the time of the tender, (2) the inspection of the documents, or (3) that he had another ten days for payment. His response was that the bank was closed and he wanted until the next business day, which happened to be four days away, to make payment. In fact, only when pressed on cross-examina-

tion did the buyer testify that he asked to see the documents. Surely, when one rejects tender, one is limited to the grounds for rejection offered, especially where the grounds are removable. (3 Williston on Sales [Rev. ed.], § 495.) The motive of the seller might be explained in that the market rose, but it might be equally explained that the buyer's motive on the day of tender was that he did not have the money in the bank, which was the fact.

The judgment in favor of the defendant should be affirmed, with costs.

DORE, J. P. and COHN, J., concur with VAN VOORHIS, J.; CALLAHAN and BREITEL, JJ., dissent and vote to affirm, in opinion.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event. Settle order on notice.